## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NED J. OYLER,** | : | **CIVIL ACTION NO. 1:07-CV-0982** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **FINANCIAL INDEPENDENCE AND** | : | |
| **RESOURCE EDUCATION,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court is the motion to compel arbitration (Doc. 6), filed by defendant Financial Independence and Resource Education ("FIRE"), based on an arbitration clause included in a contract for services between FIRE and plaintiff Ned J. Oyler ("Oyler").  Oyler contends that the arbitration clause is unconscionable and does not encompass the instant litigation, which is premised upon a violation of the Lanham Act's false advertising provision.  (See Doc. 10 at 2); see also 15 U.S.C. § 1125(a)(1)(B) (setting forth the elements of a false advertising claim pursuant to the Lanham Act).  For the reasons that follow, the motion will be granted.

## I.   Factual Background[1]

On January 25, 2006, Oyler and FIRE entered into a contract pursuant to which FIRE agreed to negotiate settlements from Oyler's creditors in exchange for a fee.  (See Doc. 1 at 8-11.)  The contract provides, in pertinent part, as follows:

---

[1] In accordance with the standard of review on a motion to compel arbitration, the court will present the facts in the light most favorable to plaintiff, as the non-moving party.  See infra Part II.

    14.  **BINDING ARBITRATION**:  Client agrees that any claim or dispute by either Client or F.I.R.E. against the other, . . . arising from or relating in any way to this agreement, shall be resolved by binding arbitration.  All parties agree that the American Arbitration Association ("AAA") under the Code of Procedure shall conduct the arbitration in effect at the time the claim is filed.  If the AAA is unable, or unwilling to act as an arbitrator, another independent arbitration organization shall be substituted.  Client understands that the result[] of this arbitration clause is that claims cannot be litigated in court, including some claims that could have been tried before a jury as class actions or as private attorney general civil actions.  Any arbitration proceeding brought by Client shall take place in Palm Beach County, Florida.  In the event of any arbitration proceeding arising out of, or relating to this Contract For Services, the prevailing party shall be entitled to recover its costs and expenses, including its attorney's fees.

(Id. at 11.)  Oyler separately initialed each numbered paragraph in the contract with

FIRE, including the paragraph setting forth the aforementioned arbitration clause.

(Id. at 8-11.)

    On May 29, 2007, Oyler filed the instant complaint, claiming that FIRE used

false advertising practices that violated the Lanham Act.  (See id. at 4-7.)  On July

10, 2007, FIRE filed the instant motion to compel arbitration.  (Doc. 6.)  The motion

has been fully briefed and is ripe for disposition.

## II.   **Standard of Review**

    Granting a motion to compel arbitration effects a "summary disposition of

the [factual] issue" of the existence of an agreement to arbitrate, and, for this

reason, courts should consider the facts in the light most favorable to the non-

moving party, giving that party "the benefit of all reasonable doubts and inferences

that may arise."  Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 &

n.9 (3d Cir. 1980), quoted with approval in Sandvik AB v. Advent Int'l Corp., 220

F.3d 99, 106 (3d Cir. 2000).  In the context of such a motion, the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party.  See id. (citing FED. R. CIV. P. 56(c)).

**III.   Discussion**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides a framework for the implementation of private arbitration agreements and establishes a strong presumption in favor of arbitration.  Sandvik, 220 F.3d at 104.  When adjudicating a motion to compel arbitration, the court must address two issues:  (1) whether the parties have entered into a valid, written agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement.  Gay v. CreditInform, __ F.3d __, 2007 WL 4410362, at *12-*13 (Dec. 19, 2007); Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 202 (3d Cir. 2001); see also U.S. Small Bus. Admin. v. Chimicles, 447 F.3d 207, 209 (3d Cir. 2006) (requiring a written agreement before a court can compel arbitration); 9 U.S.C. § 2 (addressing the validity, irrevocability, and enforcement of written agreements to arbitrate).  The court turns first to the question of whether a valid, written arbitration agreement exists between Oyler and FIRE.

**A.   Does a Valid Arbitration Agreement Exist?**

In the instant action, the contract between the parties contains a written agreement to arbitrate.  However, Oyler contends that the arbitration agreement is not valid because it is unconscionable.  (See Doc. 16 at 2.)  "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to

invalidate arbitration agreements." Bragg v. Linden Research, Inc., 487 F. Supp. 2d 593, 605 (3d Cir. 2007) (quoting Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996)).  When determining the applicability of such a defense, a court "should apply ordinary state-law principles that govern the formation of contracts." Bragg, 487 F. Supp. 2d at 605 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)); see also Homa v. Am. Express Co., 496 F. Supp. 2d 440, 447 (D.N.J. 2007) (stating that a court "must determine whether any state law contract defenses invalidate [an arbitration] agreement").  The contract in the instant case contains a choice of law clause stating that Florida law governs the agreement between the parties.[2]  (Doc. 1 at 10.)  Accordingly, Oyler's unconscionability defense will be evaluated using principles of Florida law.

---

[2] Oyler seemingly asserts that the contract's choice of law clause is also unconscionable.  The court finds this argument unavailing.  In Gay v. CreditInform, ___ F.3d ___, 2007 WL 4410362 (3d Cir. Dec. 19, 2007), the plaintiff challenged as unconscionable *both* an arbitration provision and a choice of law provision in a contract.  In determining the validity of the choice of law provision, the United States Court of Appeals for the Third Circuit applied the law of the forum state, namely, Pennsylvania.  Id. at *15; see also Homa, 496 F. Supp. 2d at 447 (applying choice of law rules of forum state in evaluating enforceability of contractual choice of law clause).  The court recognized that Pennsylvania courts generally enforce choice of law provisions unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice."  CreditInform, 2007 WL 4410362, at *15-*16 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187).  Noting that the defendant company was located in the chosen state, the court concluded that the choice of law provision was valid because the chosen state bore a "substantial relationship" to the transaction.  CreditInform, 2007 WL 4410362, at *16.  Like the defendant in CreditInform, FIRE is located in Florida, the chosen state.  (See Doc. 1 at 8.)  Accordingly, the court finds that Pennsylvania courts would enforce the choice of law provision because Florida bears a "substantial relationship" to the transaction between Oyler and FIRE.

Florida law requires a showing of *both* substantive and procedural
unconscionability before an arbitration provision will be deemed unenforceable.
<u>Alterra Healthcare Corp. v. Estate of Linton ex rel. Graham</u>, 953 So. 2d 574, 579
(Fla. Dist. Ct. App. 2007); <u>Murphy v. Courtesy Ford, LLC</u>, 944 So. 2d 1131, 1134 (Fla.
Dist. Ct. App. 2006).  The party seeking to avoid an arbitration provision has the
burden to establish its unconscionability.  <u>Murphy</u>, 944 So. 2d at 1134.  Substantive
unconscionability "concerns the actual terms of the contract, and the court must
determine whether they are so outrageously unfair as to shock the judicial
conscience." <u>Prieto v. Healthcare & Ret. Corp. of Am.</u>, 919 So. 2d 531, 533 (Fla. Dist.
Ct. App. 2005).  Procedural unconscionability "relates to the manner in which a
contract is made." <u>Lopez v. Ernie Haire Ford, Inc.</u>, ___ So. 2d ___, No. 2D06-1665,
2007 WL 486616, at *1 (Fla. Dist. Ct. App. Feb. 16, 2007).  Factors to be considered in
a court's evaluation of procedural unconscionability include:  (1) the relative
bargaining power of the parties, and (2) the parties' abilities to know and
understand the disputed contract terms.  <u>Id.</u> at *1.

The court turns first to the issue of procedural unconscionability.  The first
procedural unconscionability factor, namely, the relative bargaining power of the
parties, weighs in Oyler's favor but is not dispositive of the issue.  The instant
contract was one of adhesion – it was presented on a "take-it-or leave-it basis" and

Oyler had no meaningful opportunity to bargain regarding its terms.[3]  Murphy, 944
So. 2d at 1134.  The existence of an adhesion contract is a "strong indicator" of
procedural unconscionability because it "suggests an absence of meaningful
choice."  VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc., 912 So. 2d 34, 40 (Fla.
Dist. Ct. App. 2005) (internal citations and quotations omitted).  Nevertheless, "the
presence of an adhesion contract alone does not require a finding of procedural
unconscionability."  Id.  Provided that the purchaser of a service is free to obtain
those services elsewhere, he or she is not required to sign a contract of adhesion,
and a finding of procedural unconscionability does not result.  Id.; see also Fonte v.
AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1025 n.2 (Fla. Dist. Ct. App. 2005)
(concluding that an adhesion contract was not unconscionable because plaintiff did
not have to sign the contract if she was unsatisfied with its terms).  Here, Oyler was
free to obtain the debt reduction services offered by FIRE from another source;
therefore, the imbalance in the relative bargaining power of the parties does not,
without more, mandate a finding of procedural unconscionability.

   Turning to the second procedural unconscionability factor, the court finds no
evidence of record to suggest that Oyler lacked the requisite ability to know and
understand the contract's terms.  To the contrary, Oyler admits that he engaged

---

   [3] An adhesion contract is "a standardized contract form offered to
consumers of goods and services on essentially a 'take it or leave it' basis without
affording the consumer a realistic opportunity to bargain and under such
conditions that the consumer cannot obtain the desired product or services except
by acquiescing in the form contract."  Fonte v. AT&T Wireless Servs., Inc., 903 So.
2d 1019, 1025 n.2 (Fla. Dist. Ct. App. 2005).

FIRE's salesperson in a dialogue about any contractual terms that he did not readily understand. (See Doc. 1 at 4.) Hence, it is pellucidly clear that Oyler appreciated his duty "to learn and know the contents of [the] proposed contract before he sign[ed] and deliver[ed] it." Lopez, 2007 WL 486616, at *1. If Oyler did not comprehend the import of the arbitration provision, he was free to inquire about its meaning before signing the contract and initialing the arbitration provision. Having freely entered into the contract, Oyler may not retrospectively avoid its consequences "simply because he . . . elected not to read and understand its terms before executing it." Murphy, 944 So. 2d at 1134; see also Lopez, 2007 WL 486616, at *1 (finding that a plaintiff who had signed a contract and initialed its arbitration provision could not "defeat enforcement of [the] written contract on the ground that he signed it without reading it"); Bland ex rel. Coker v. Healthcare & Ret. Corp. of Am., 927 So. 2d 252, 256-57 (Fla. Dist. Ct. App. 2006) (stating that a plaintiff's "limited education and apparent failure to consider carefully" the terms of a contract did not compel a finding of procedural unconscionability).

Nor was Oyler's ability to understand the arbitration provision hindered by its presentation or location in the contract. In Murphy v. Courtesy Ford, LLC, 944 So. 2d 1131 (Fla. Dist. Ct. App. 2006), the court found an arbitration provision to be valid where the provision appeared in the same type-face as the balance of the contract and there was no evidence that the seller had prevented the buyer "from knowing and understanding the disputed contract terms." Id. at 1135. In contrast, in Palm Beach Motor Cars Ltd., Inc. v. Jeffries, 885 So. 2d 990 (Fla. Dist. Ct. App.

2004), the court found an arbitration provision to be procedurally unconscionable where the provision was located on the back of the agreement, the language on the front of the agreement regarding the presence of the provision on the back was in the smallest font on the page, and the seller did not inform the buyer of the provision on the back.  Id. at 991.  The arbitration provision in the instant case bears none of the markers of unconscionability inherent in the provision invalidated in Jeffries.  The provision appears in the same type-face as the remainder of the contract and is logically located on the front of the agreement. Moreover, the requirement that each paragraph be separately initialed militates against a finding that FIRE was attempting to prevent Oyler from reading or understanding the arbitration provision.  To the contrary, the initialing requirement actually compelled Oyler to give the paragraph individual consideration before affixing his initials thereto.

While Oyler faced an imbalance in bargaining power when entering into the instant contract, he appreciated his duty to learn and understand the contract's terms and FIRE in no way prevented him from doing so.  Accordingly, the court finds that the contract's arbitration provision was not procedurally unconscionable. In light of this finding, the court need not address the conjunctive issue of substantive unconscionability.  See Alterra, 953 So. 2d at 579 (finding that failure to demonstrate procedural unconscionability renders substantive unconscionability issue moot); see also Lopez, 2007 WL 486616, at *1; Murphy, 944 So. 2d at 1135.

      **B.**    **Does Oyler's Lanham Act Claim Fall Within the Agreement's Scope?**

Absent language in the parties' agreement clearly providing otherwise, the arbitrability of a dispute is a question of law for the court to determine. <u>Chimicles</u>, 447 F.3d at 209; <u>General Electric Co. v. Deutz AG</u>, 270 F.3d 144, 154 (3d Cir. 2001). The reviewing court must apply federal substantive law. <u>See</u> <u>Peltz v. Sears, Roebuck and Co.</u>, 367 F. Supp. 2d 711, 717 (E.D. Pa. 2005) (citing <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985)). Federal law provides that, when an arbitration agreement exists, the court should compel arbitration "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>Trippe Mfg. Co. v. Niles Audio Corp.</u>, 401 F.3d 529, 532 (3d Cir. 2005) (quoting <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 650 (1986) (emphasis in original)). This presumption of arbitrability is particularly strong when the parties contractually agree to an arbitration provision broadly encompassing all disputes arising from and/or out of the agreement. <u>AT&T</u>, 475 U.S. at 650; <u>see</u> <u>Battaglia v. McKendry</u>, 233 F.3d 720, 725 (3d Cir. 2000) ("This presumption of arbitrability is particularly applicable where the arbitration clause at issue is broad."). To overcome the presumption of arbitrability, "a party must either establish the existence of an express provision excluding the grievance from arbitration or provide 'the most forceful evidence of a purpose to exclude the claim from

arbitration.'" <u>Miron v. Seidman</u>, 342 F. Supp. 2d 324, 329 (E.D. Pa. 2004) (quoting

<u>AT&T</u>, 475 U.S. at 650).

The arbitration clause in the instant case, which prescribes arbitration for

"any claim or dispute . . . arising from or relating in any way" to the agreement

between the parties," is a quintessentially broad provision.  (Doc. 1 at 11); <u>see also</u>

<u>Peltz</u>, 367 F. Supp. 2d at 716 (deeming "very broad" an arbitration clause that

applied to any and all claims "arising out of, relating to, or in connection with" the

agreement between the parties).  The claim at issue in the instant case is that FIRE

intentionally made false statements when promoting its debt reduction services in

contravention of the Lanham Act.  The arbitration clause does not contain a

provision expressly excluding Lanham Act claims from its grasp.  Accordingly,

Oyler must proffer "the most forceful evidence" of a mutual intent to exclude

Lanham Act claims from the reach of mandatory arbitration.  <u>See Miron</u>, 342 F.

Supp. 2d at 329.  To meet this burden, Oyler argues that his Lanham Act claim is

not arbitrable because it relates to conduct that occurred prior to the date that the

parties entered into a contract.  When confronted with similar facts, the United

States Court of Appeals for the Ninth Circuit held that the plaintiff's Lanham Act

claim was arbitrable because it "pertain[ed] to statements made . . . in the course of

[the defendant's] promotional efforts," which ultimately led to the formation of the

contract at issue.  <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 724 (9th Cir. 1999); <u>see</u>

<u>also</u> <u>Innerwireless, Inc. v. Johnson Controls, Inc.</u>, No. 07-312, 2007 WL 2428591, at *4

(N.D. Tex. Aug. 27, 2007) (concluding that Lanham Act claim fell within broad

10

arbitration clause where the underlying contract "served as the conduit through which" the defendant's alleged misdeeds "were made possible"); <u>Metro. Life Ins. Co. v. O'Malley</u>, 392 F. Supp. 2d 1042, 1045 (N.D. Ill. 2005) (holding that Lanham Act claim fell within broad agreement to arbitrate); <u>Medtronic, Inc. v. Etex Corp.</u>, No. 04-1355, 2004 WL 950284, at *3 (D. Minn. Apr. 28, 2004) (same); <u>Mann v. N.A.S.A. Intern., Inc.</u>, No. 99-11936, 2000 WL 1182823, at *3-*4 (S.D.N.Y. Aug. 21, 2000) (same); <u>Hueston v. Hueston</u>, No. 98-1126, 1998 WL 903635, at *2 (N.D.N.Y. Dec. 23, 1998) (same).  As in <u>Simula</u>, the statements at issue in the action *sub judice* relate to a promotional radio advertisement that prompted Oyler to enter into the disputed contract.  (<u>See</u> Doc. 1, Ex. D.)  Because the radio communication underlying Oyler's Lanham Act claim led directly to the formation of the contract between the parties, the court cannot say with "positive assurance" that Oyler's Lanham Act claim falls outside of the contract's binding arbitration provision.  Accordingly, the court finds that the instant litigation is properly characterized as a "claim or dispute . . . arising from or relating in any way" to the contract between the parties.

## IV.   <u>Conclusion</u>

The parties to the instant action entered into a valid, written agreement to arbitrate.  Because Oyler has failed to prove that his Lanham Act claim falls outside the scope of the arbitration provision, Oyler must participate in arbitration as mandated by his agreement with FIRE.

An appropriate order will issue.


   S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge


Dated:      January 30, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NED J. OYLER,** | : | **CIVIL ACTION NO. 1:07-CV-0982** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **FINANCIAL INDEPENDENCE AND** | : | |
| **RESOURCE EDUCATION,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 30th day of January, 2008, upon consideration of the motion to compel arbitration (Doc. 6), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to compel arbitration (Doc. 6) is GRANTED.

2. Plaintiff's claims shall be REFERRED to arbitration in accordance with the parties' contract for services.

3. The above-captioned case is STAYED pending completion of arbitration pursuant to 9 U.S.C. § 3.

4. The parties shall jointly file with the court a notice of the status of the arbitration proceedings within ninety (90) days of the date of this order.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge